Antonietta **SCULIMBRENE**, Plaintiff,

v.

The **PAUL REVERE INSURANCE COMPANY**, Defendant.

Civil Action No. 95–74.

United States District Court,
E.D. Kentucky.

April 16, 1996.

Timothy N. Philpot, Philpot, Ransdell, Roach & Wier, PLLC, Lexington, KY, for plaintiff.

Henry E. Kinser, Mindy G. Barfield, Wyatt, Tarrant & Combs, Lexington, KY, James D. Ishmael, Jr., Fowler, Measle & Bell, L.L.P., Lexington, KY, Samuel G. Bridge, Jr., Wyatt, Tarrant & Combs, Louisville, KY, for defendant.

## OPINION AND ORDER

FORESTER, District Judge.

This matter is before the Court upon the motion of the defendant, The Paul Revere Insurance Company ("Paul Revere"), for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Also before the Court is Paul Revere's motion for pretrial ruling on the issue of contract damages. These matters have been fully briefed and are ripe for review.

## I. FACTS AND PROCEDURAL HISTORY

The plaintiff, Antonietta Sculimbrene, filed this action against Paul Revere on December 27, 1994 in Jessamine Circuit Court. Sculimbrene, a medical doctor licensed to practice in the field of anesthesiology, alleges that she became insured by Paul Revere under a disability insurance policy on February 22, 1991. Sculimbrene further alleges that on August 10, 1992, she became totally disabled under the terms of the policy and that Paul Revere began to pay her $7,300.00 per month as a benefit pursuant to the terms and conditions of the policy. Thereafter, in December 1994, Sculimbrene alleges that Paul Revere attempted to settle this case in bad faith and refused to pay benefits due under the policy. Paul Revere removed this action to this Court on February 13, 1995 on the basis of diversity jurisdiction. On January 11, 1996, Paul Revere filed a motion to bifurcate the contract and bad faith phases of the trial. Based upon Rule 42(b) of the Federal Rules of Civil Procedure, the Court determined that Paul Revere would be unfairly prejudiced if this action is not bifurcated. Therefore, the Court granted Paul Revere's motion to bifurcate on February 26, 1996.

## II. PENDING MOTIONS

### A. PAUL REVERE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On February 12, 1996, Paul Revere filed a motion for partial summary judgment. In support of its motion, Paul Revere asserts the following arguments:

(1) that Sculimbrene's claim is "fairly debatable" and there is no bad faith as a matter of law;

(2) that there is no evidence of extreme and outrageous conduct on the part of Paul Revere, and Sculimbrene cannot make out a prima facie case of outrage; and

(3) that there is no evidence of fraud; therefore, the fraud claim must be dismissed.

Each argument will be addressed separately below.

### 1. RELEVANT FACTS

Sculimbrene became insured under an occupation disability insurance policy issued by Paul Revere on February 22, 1991. Pursu-

ant to the policy, Paul Revere agreed to pay monthly installment benefits during any period which Sculimbrene was "totally disabled." The policy defines "totally disabled" as follows:

a. You are unable to perform the important duties of Your Occupation; and

b. You are receiving Physician's Care....

Sculimbrene was employed to serve on the staff at Pikeville United Methodist Hospital ("Pikeville Methodist") as an anesthesiologist on a part-time basis, or three days a week, in early 1992. Her duties included reviewing a patient's medical and anesthesia history, prescribing and administering anesthesia during surgery, and monitoring the patient during surgery and recovery. During her short tenure at Pikeville Methodist, Sculimbrene claims that Dr. Valera, her immediate supervisor, and others at the hospital, harassed her by: (1) not assigning her a locker or an anesthesia cart; (2) ignoring her complaints about inadequate equipment; (3) requiring her to perform anesthesiology alone without the assistance of a nurse assistant; and (4) imposing an inflexible and inconsistent work schedule.

Sculimbrene worked at Pikeville Methodist for approximately 23 days. On June 16, 1992, during a meeting with administrators, Sculimbrene was placed on a leave of absence and told to seek professional psychiatric assistance in order to return to work. Sculimbrene subsequently filed a sex discrimination complaint against Pikeville Methodist in the Pike Circuit Court on October 4, 1994 (the "Pikeville action").

On July 15, 1992, Sculimbrene filed a claim on the policy claiming she was "totally disabled" by an "anxiety disorder" as of June 18, 1992. Sculimbrene was first seen by Dr. Robert Woolley, M.D., a psychiatrist, on August 10, 1992 who agreed that Sculimbrene was not able to perform the duties of an anesthesiologist and certified the period of disability from June 26, 1992 to December 31, 1992. Paul Revere initially granted Sculimbrene's claim as of August 10, 1992, the date she came under the care of a physician. Sculimbrene alleges that she has been under the continuous care of Dr. Woolley since

August 1992, and a psychologist, Dr. Gary Stewart, Ph.D., and Dr. David Mahoney, Ph. D., since early 1993.

Paul Revere paid Sculimbrene monthly installment benefits of approximately $7300 from August 10, 1992 to December 16, 1994. As required by the policy, Paul Revere required Sculimbrene to submit continuing proof of loss during this period. Dr. Woolley, her treating psychiatrist, submitted monthly progress reports from December 23, 1992 to December 22, 1994. Initially, Dr. Woolley's progress reports indicated that Sculimbrene's progress was "good" and that she could return to work in March 1993. Subsequent progress reports in March continued to indicated good progress, but continually pushed back the date Sculimbrene could be released to return to work.

Paul Revere began investigating Sculimbrene's claim and its consulting psychiatrist, Dr. Stephen R. Greenberg, reviewed Sculimbrene's file and discussed her claim with Dr. Mahoney and Dr. Woolley. As a result of his review of the file and his discussions with Sculimbrene's doctors, Dr. Greenberg concluded that Sculimbrene's disability was temporary in nature and was a result of job dissatisfaction.

After these discussions, Dr. Woolley's prognosis for Sculimbrene from August 1993 to December 1994 descended to "fair" and the expected date she could return to work became "unknown." As a result of the doctors' disagreement, Dr. Woolley suggested that Sculimbrene submit to an "independent medical examination" ("IME") by Dr. R.P. Granacher, M.D., a psychiatrist. Paul Revere agreed and Sculimbrene was seen by Dr. Granacher on August 2, 1994. Dr. Granacher noted that Sculimbrene had been taken off of anti-depressants because of her pregnancy. He also found that Sculimbrene could practice anesthesiology is she were not pregnant.

On December 16, 1994, a Paul Revere representative, Glen Flager, met with Sculimbrene and her attorney to discuss her continued disability status and future benefits under the policy. Flager informed Sculimbrene that Paul Revere believed she was

capable of returning to work as an anesthesiologist and therefore not "totally disabled" under the policy or entitled to continued benefits. Flager offered to make monthly payments to Sculimbrene through May 1994, waive her premiums for that period, allow Sculimbrene's policy to remain in effect, and allow her to make another claim in the event her condition deteriorated. Alternatively, Flager offered a lump sum payment coupled with the cancellation of her policy. Sculimbrene rejected Flager's offers to settle this matter and her benefits under the policy were then terminated as of December 16, 1994. Thereafter, Sculimbrene commenced the present action.

## 2. ANALYSIS

### (A) BAD FAITH

Sculimbrene's complaint asserts, *inter alia,* a claim of bad faith against Paul Revere pursuant to KRS 304.12–230, the Unfair Claims Settlement Practices Act, with regard to Paul Revere's termination of her benefits. Specifically, Sculimbrene alleges that Paul Revere acted in bad faith by talking to her doctors and attempting to persuade them to change their opinion on her disability status, thereby joining in a conspiracy to terminate her benefits by telling the doctors that they should "stick together" during the health care crisis. Moreover, Sculimbrene contends that Paul Revere relied on Dr. Greenberg's opinion, even though Dr. Greenberg never saw Sculimbrene, and ignored the opinions of her treating doctors.

 In order to maintain a private cause of action for bad faith failure to pay, Sculimbrene must establish (1) Paul Revere's obligation to pay; (2) that Paul Revere lacked a reasonable basis for failing to immediately pay; and (3) that Paul Revere knew it had no reasonable basis to delay payment or acted in reckless disregard as to whether such a basis existed. *Wittmer v. Jones,* 864 S.W.2d 885, 890 (Ky.1993). A claim for bad faith cannot be maintained as a matter of law if Sculimbrene's claim is "fairly debatable" on the law or the facts. *Id.* at 890.

 Clearly, Sculimbrene's claim was fairly debatable as a matter of fact and a reasonable basis existed to terminated Sculimbrene's disability benefits. Dr. Granacher examined Sculimbrene, and reviewed her medical records and the reports of her doctors, and concluded that she was not disabled to perform the important duties of anesthesiology. Dr. Granacher is clearly qualified to make such a finding. Sculimbrene, on the other hand, argues that her doctors knew her condition better and that their diagnoses were more contemporaneous in time.

It is not bad faith to rely upon an independent evaluation over the opinion of a treating doctor. Which doctor made the right decision is a matter of fact. Paul Revere's reliance upon the IME findings of Dr. Granacher in deciding to discontinue benefits certainly does not constitute bad faith as a matter of law.

 Sculimbrene also asserts a bad faith claim based on Dr. Greenberg's communications with her doctors. Specifically, Sculimbrene contends that Paul Revere, through Dr. Greenberg, immediately began to scrutinize her claim for disability benefits and tried to harass her doctors into changing their diagnosis. It is certainly not bad faith for an insurance company to investigate a claim. Moreover, Paul Revere continued to pay Sculimbrene policy benefits for two years after Sculimbrene initiated her lawsuit against Pikeville Methodist, in which she sought to be reinstated to a full-time position as surgical coordinator of the anesthesiology department. Paul Revere was clearly justified in contacting Sculimbrene's treating doctors, and Dr. Woolley himself stated that his conversations with Dr. Greenberg were "professional" and that his opinions were "legitimate." Clearly, there was no bad faith on the part of Dr. Greenberg or Paul Revere.

For the foregoing reasons, the Court finds that Paul Revere decided to terminate Sculimbrene's disability benefits on the basis of credible medical evidence that she was not disabled. As there is no evidence of bad faith on the part of Paul Revere, Paul Revere's motion for partial summary judgment on Sculimbrene's bad faith claim will be granted.

## (B) OUTRAGE

█ Sculimbrene also alleges that Paul Revere's actions constitute "outrageous conduct" for which Sculimbrene can seek a tort recovery. Kentucky has adopted Section 46 of the Restatement (Second) of Torts, which states:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Craft v. Rice*, 671 S.W.2d 247, 251 (Ky.1984). To maintain a claim for outrage, Sculimbrene must prove:

(1) that Paul Revere's actions were intentional or reckless;

(2) that Paul Revere's actions were extreme and outrageous;

(3) that there is a causal connection between Paul Revere's actions and the emotional distress; and

(4) that Sculimbrene's emotional distress is severe.

*Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2–3 (Ky.1990).

█ There is no evidence in this case to support Sculimbrene's claim that Paul Revere's investigation and decision to terminate her benefits amounted to "extreme and outrageous" conduct. Moreover, Sculimbrene did not address her claim for outrage in her response to Paul Revere's motion for partial summary judgment. Therefore, Paul Revere's motion for partial summary judgment with regard to Sculimbrene's claim for outrage will be granted.

## (C) FRAUD

█ Finally, Sculimbrene alleges that Paul Revere defrauded her by failing to pay her benefits under the policy. To prove fraud under Kentucky law, Sculimbrene must show:

(1) Paul Revere made a false representation of fact;

(2) the false representation was material;

(3) Paul Revere knew the representation was false;

(4) Paul Revere made the representation with the intent it be relied upon;

(5) Sculimbrene actually relied upon the representation; and

(6) Sculimbrene was injured as a result of the representation.

*Keeneland Ass'n v. Eamer*, 830 F.Supp. 974, 993 (E.D.Ky.1993) (applying Kentucky law). The fraud must be proven by clear and convincing evidence. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

█ In this case, there is no proof of a false, material representation. Moreover, Sculimbrene failed to address this issue in her response to Paul Revere's motion for partial summary judgment. Therefore, Paul Revere's motion for partial summary judgment with regard to Sculimbrene's claim for fraud will be granted.

## B. PAUL REVERE'S MOTION FOR PRETRIAL RULING ON THE ISSUE OF DAMAGES

On February 1, 1996, Paul Revere filed a motion for pretrial ruling on the issue of contract damages. Essentially, the parties disagree on the computation of damages in a case involving a bad faith denial of disability benefits. Because the Court has determined that Paul Revere is entitled to partial summary judgment on Sculimbrene's claim for bad faith, this motion is moot.

## III. CONCLUSION

Accordingly, the Court hereby ORDERS:

(1) Paul Revere's motion for partial summary judgment [docket entry 57] is GRANTED, and Sculimbrene's claims of bad faith, outrage, and fraud are DISMISSED from this action; and

(2) Paul Revere's motion for pretrial ruling on the issue of contract damages [docket entry 55] is PASSED AS MOOT.