**Larry S. SEIDMAN, D.O., Plaintiff,**

v.

**MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Defendant.**

No. CIV. A. 96–3191.

United States District Court, E.D. Pennsylvania.

Sept. 11, 1997.

David L. Kwass, Duane, Morris & Heckscher, Beatrice O'Donnell, Duane, Morris & Heckscher, Philadelphia, PA, for Larry S. Seidman, D.O., Plaintiff.

Barry M. Klayman, Wolf, Block, Schorr and Solis–Cohen, Phila, for Minnesota Mutual Life Insurance Co., Defendant.

## *MEMORANDUM*

LOWELL A. REED, Jr., District Judge.

Plaintiff Dr. Larry S. Seidman, D.O. ("Seidman") brings this action against defendant Minnesota Mutual Life Insurance Company ("Mutual Life") alleging that defendant has improperly refused to pay benefits owed to him under a disability policy issued by defendant. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy is in excess of $50,000.00,[1] exclusive of interest and cost.

Pending before the Court is the motion for partial summary judgment (Document No. 11) of defendant Mutual Life of Counts II (bad faith), III (fraud and deceit), IV (deceptive trade practices), and V (intentional infliction of emotional distress).[2] For the following reasons, the motion will be granted.

## I. BACKGROUND [3]

Seidman, an obstetrician/gynecologist, renewed his disability insurance policy with Mutual Life on January 3, 1993. In mid March of that year, he was hospitalized for treatment of coronary artery disease and underwent cardiac bypass surgery. Shortly thereafter, he was treated by Dr. Stephen Risen, a psychiatrist, for depression resulting from his coronary disease. According to Seidman, he has been unable to perform his regular occupation

---

1. Plaintiff filed his complaint on July 12, 1996 in the United States District Court for the Eastern District of Pennsylvania. I note that this lawsuit was commenced before the jurisdictional amount in controversy requirement under 28 U.S.C. § 1331 increased to $75,-000.00. *See* Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, 110 Stat. 3847 (enacted October 19, 1996, and effective January 17, 1997).

2. Seidman concedes that the evidence does not support a claim of intentional infliction of emotional distress. Pl. Mem. at 2 n. 1. Therefore, I will enter judgment on Count V in favor of Mutual Life and against Seidman.

3. The following facts are based on the evidence of record viewed in the light most favorable to Seidman, the nonmoving party, as required when considering a motion for summary judgment. *See Carnegie Mellon Univ. v. Schwartz*, 105 F.3d 863, 865 (3d Cir.1997).

as an obstetrician/gynecologist since March 1993.

Mutual Life paid Seidman monthly disability payments from May 1993 to December 1994. During that time, several medical evaluations were performed of him by health professionals employed by Mutual Life. In November 1993, Mutual Life directed him to submit to an independent medical examination ("IME") by a cardiologist selected by Mutual Life, named Dr. Robert P. Biggans. After examining Seidman, Dr. Biggans reported that plaintiff "seems to be doing reasonably well from a cardiac standpoint" and that "[f]rom a cardiac standpoint, the amount of physical work involved in practicing obstetrics would not pose a risk to him." Def. Exh. 1. Dr. Biggans concluded that Seidman should obtain a "complete psychiatric evaluation and opinion as to his ability to practice obstetrics." Def. Exh. 1.

Approximately one year later, Mutual Life again directed Seidman to submit to an IME, this time given by a psychiatrist named Dr. John O'Brien, II, who was also selected by Mutual Life. Prior to the examination, Dr. Gary Athelstan, a psychologist who is a consultant to Mutual Life, contacted Dr. O'Brien and requested that he administer the Minnesota Multiphasic Personality Inventory–II ("MMPI–II") test. Dr. O'Brien reviewed all the pertinent medical records of Seidman and completed an examination of Seidman relating to his physical appearance, speech, mood, thought processes and content, memory, knowledge, concentration, intelligence, and social judgment. Dr. O'Brien also gave the MMPI test to Seidman to complete, which Seidman took home and returned some days later. Computerized scoring of the MMPI–II test results revealed that Seidman had answered the questions "in an exaggerated manner, endorsing a wide variety of inconsistent symptoms and attitudes," and that the "resulting profile was not a valid indication of the individual's personality and symptoms." Aff. of O'Brien ¶ 8. The MMPI–II results recommended that the test be taken again. However, Dr. O'Brien believed that he could formulate an opinion regarding Seidman's psychiatric conditions without having to re-administer the MMPI–II test. Dr. O'Brien suggested in his medical report that the inconsistencies of Seidman's answers in the MMPI–II raised the possibility of falsely claiming psychological problems and malingering. Based on the examination of Seidman, the MMPI–II, and a review of the medical records, Dr. O'Brien concluded that Seidman does not suffer from a psychiatric condition, does not warrant a psychiatric diagnosis, is not in need of psychiatric treatment, and is not disabled from a psychiatric perspective.

In light of the IME reports of Dr. Biggans and Dr. O'Brien, Mutual Life concluded that Seidman was not disabled from performing his regular occupation. Consequently, no further benefits were paid to Seidman after May 11, 1995.

Seidman commenced this lawsuit in April 1996 alleging five causes of action: breach of insurance contract, statutory bad faith, fraud and deceit, deceptive trade practices, and intentional infliction of emotional distress. Mutual Life has moved for summary judgment on all Counts, except for Count I, breach of insurance contract.

## II. LEGAL STANDARD

The standard for a summary judgment motion in federal court is set forth in Federal Rule of Civil Procedure 56. Rule 56(c) states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, a dispute over a material fact must be "genuine," *i.e.*, the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

The moving party has the initial burden to identify evidence that it believes shows an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982). The court must consider the evidence of the non-moving party as true, drawing all justifiable inferences arising from the evidence in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. To defeat the motion for summary judgment, the non-moving party must offer specific facts contradicting those set forth by the movant, thereby showing that there is a genuine issue for trial. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The parties do not dispute that Pennsylvania law applies.

## III. DISCUSSION

Seidman essentially asserts the same factual allegations and arguments in support of all of the claims at issue in the present motion. Seidman asserts that Mutual Life dropped Seidman's plan for cardiac rehabilitation without any basis. He next contends that Mutual Life directed Seidman to undergo a psychiatric evaluation not for the purpose of making a psychological diagnosis, but rather as a pretense for Mutual Life to create evidence, *e.g.*, Seidman was exaggerating his symptoms, to support the termination of his disability benefits. Along these lines, Seidman asserts that the evaluation was designed to discredit, embarrass and deceive him. Seidman further maintains that the evaluation was too brief (less than one hour) and only performed on one occasion. Moreover, Seidman argues that the MMPI–II was a personality test and not designed to diagnose depression, and that the failure of Dr. O'Brien to re-adminster the test, despite the reportedly invalid results and recommendation to do so, also demonstrates an improper bases for terminating his disability benefits.

In support of these contentions, Seidman submits a portion of the deposition testimony of Dr. Athelstan to demonstrate that the purpose of the MMPI–II was not to diagnose a medical condition.[4] To dem-

---

4. Dr. Athelstan stated:

Question: So in your opinion, was the MMPI diagnostic?

Answer: Well, not in the sense that you could use it to reliably diagnose any medical condition that he might have, but it was diagnostic of a certain test taking attitude, if you will. It's apparent that he approached the test and responded to it in a very distinctive way.

. . .

Question: And doesn't [the scoring sheet] also indicate that the client should take the test again?

Answer: Well, that depends on the—the purpose for which the test was administered in the first place. If your purpose is to arrive at an accurate diagnosis of a specific mental condition, yes, you would want it to be redone.

Dep. of Athelstan at 92, 93.

onstrate the inadequacy of the entire psychiatric evaluation performed by Dr. O'Brien, Seidman submits the affidavit of Dr. Paul Moberg, a neuropsychologist. Dr. Moberg states that one fifty-minute interview is not sufficient to diagnose depression and that the MMPI–II is not diagnostic of depression and that there are far more direct and valid tests for assessing depression. Aff. of Moberg ¶¶ 4, 5. He continues that the MMPI–II test should have been re-administered to Seidman to be useful in assessing depression. ·Aff. of Moberg ¶ 5.

I find that, even ·when considering all possible inferences in a light most favorable to Seidman as I am obligated to· do for a motion for summary judgment, no reasonable jury could return a verdict in favor of Seidman on the claims of bad faith, fraud and deceit, and deceptive consumer practices. I will discuss each briefly below.

### A. *Bad Faith*

■ To make out his claim for bad faith, Seidman "must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 494 Pa. 501, 431 A.2d 966, 971 (1981) (quotations and citations omitted). In a factually similar case, *Sculimbrene v. Paul Revere Ins. Co.*, the plaintiff, an anesthesiologist, sued his insurer for failure to pay benefits pursuant to a total disability policy. 925 F.Supp. 505, 506 (E.D.Ky. 1996). The court bifurcated the contract and bad faith phases of the trial. *Id.* On the insurer's motion for partial summary judgment on the bad faith claim, the court held that there was no evidence of bad faith on the part of the insurer when it terminated plaintiff's disability benefits based upon an independent medical evalu-

ation, even though that independent evaluation differed from the opinions of plaintiff's treating physicians. *Id.* at 508. In the absence of a Pennsylvania case directly on a point, I find that, based upon existing Pennsylvania law, the reasoning and the decision of the *Sculimbrene* court accurately represents how the law in Pennsylvania would be applied in the instant case.

■ In the ·present case, Mutual Life based its decision to stop paying disability benefits on the IME's performed by Drs. Biggans and O'Brien as well as a review of other medical information, including correspondences from Seidman and his treating physicians. Aff. of Phillips at ¶ 14. Even assuming that the MMPI–II was inadequate, Dr. O'Brien based his conclusion predominantly on his interview session with Seidman. In fact, his report states that he did not believe it was necessary to re-administer the MMPI–II test to formulate his ultimate opinion as to Seidman's psychiatric status. And, even if I were to credit the opinion of Dr. Moberg that there are better tests to diagnose for depression than those tests used by Dr. O'Brien and that Dr. O'Brien's fifty-minute interaction with Seidman was too short, I find that this does not create a genuine ·issue of material fact that Mutual Life did not have a reasonable basis to deny benefits to plaintiff. It is not bad faith for Mutual Life to rely on the IMEs of qualified health professionals who examined Seidman in a usual and customary fashion. Seidman has offered no evidence that Mutual Life knew or should have known that the IMEs were inadequate, yet relied on them anyway when discontinuing the benefits. While the adequacy of the psychiatric examinations may be disputed, the reliance on the examinations by Mutual Life to discontinue benefits was reasonable and thus not in bad faith as a matter of law. *See id.*

---

I note here that, earlier in the deposition, Dr. Athelstan testified that the MMPI–II was a test for depression and its "original purpose

was to diagnose psychiatric illness." Dep. of Athelstan at 91.

## B. *Fraud and Deceit*

■ The common law tort of fraud and deceit is comprised of five elements: (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention to induce action thereby; (4) justifiable reliance thereon; and (5) damage as a proximate result. *Wilson v. Donegal Mut. Ins. Co.*, 410 Pa.Super. 31, 598 A.2d 1310, 1315 (1991). In his complaint, Seidman alleged that at the time Mutual Life directed him to undergo an IME with Dr. O'Brien, Mutual Life falsely and knowingly represented that the purpose of the IME was to determine whether Seidman was depressed, and that Mutual Life further knew that IME was a pretense designed to produce evidence that he was malingering. *See* Complaint ¶ 28. I find that no reasonable jury could find proof of a misrepresentation on the part of Mutual Life. Even accepting the arguments of Seidman that the psychiatric exam performed by Dr. O'Brien was not designed to diagnose depression, there is no evidence that Mutual Life knew beforehand that the test performed by Dr. O'Brien would be inadequate or that they knew the results of the MMPI–II would be invalid. In fact, Mutual Life had never employed Dr. O'Brien before the IME of Seidman. Aff. of Phillips ¶ 8. Moreover, Mutual Life never suggested to Dr. O'Brien what his conclusions or opinions should be as to the psychiatric status of Seidman. Aff. of Phillips ¶ 10. Because Seidman has adduced no evidence of any misrepresentation made by Mutual Life, I find that, as a matter of law, no claim for fraud and deceit can be made.

## C. *Deceptive Trade Practices*

■ In Count IV, Seidman alleges violations of Pennsylvania's Unfair Insurance Practices Act ("UIPA"), 40 Pa. Stat. Ann. § 1171.5(a) and Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201–2(4). It is well settled that private actions under the UIPA cannot be maintained. *Liberty Mut. Ins. Co. v. Paper Mfg. Co.*, 753 F.Supp. 156, 159 (E.D.Pa.1990); *D'Ambrosio v. Pennsylvania Nat. Mut. Cas. Ins.*, 494 Pa. 501, 431 A.2d 966, 969–70 (1981); *Romano v. Nationwide Mut. Fire, Ins. Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1232 (1994). Therefore, I find, as a matter of law, that Seidman cannot assert a UIPA violation as grounds for recovery. However, a private cause of action may be maintained under the UTPCPL even if the acts complained of fall within the purview of another statute such as the UIPA. *Lombardo v. State Farm Mut. Auto. Ins. Co.*, 800 F.Supp. 208, 213 (E.D.Pa.1992). Under the UTPCPL, only malfeasance, the improper performance of a contractual obligation, is actionable. *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir.1995) (citing *Gordon v. Pennsylvania Blue Shield*, 378 Pa.Super. 256, 548 A.2d 600, 604 (1988)). Nonfeasance, the failure to perform a contractual duty, such as an insurer's mere refusal to pay a claim, is not actionable. *Id.*

■ Seidman argues that he has proved malfeasance on the part of Mutual Life for subjecting Seidman to an inadequate psychiatric evaluation. In support of this argument, Seidman again points to the expert testimony of Dr. Moberg who states that the psychiatric evaluation was not sufficient to rule out a diagnosis of depression and that the evaluation assessed the validity of Seidman's test-taking, rather than his depression. Seidman cites to the decision in *Parasco v. Pacific Indemnity Company*, which involved a suit brought by homeowners against their insurer after the insurer refused to pay a claim for a destruction of the house on the basis that homeowners set the fire. 870 F.Supp. 644, 645 (E.D.Pa.1994). The court held that, *inter alia*, the homeowners' allegation that the post-loss investigation by the insurer was conducted in an unfair and nonobjective manner, is sufficient to state a viable claim under UTPCPL. *Id.* at 648. However, a significant difference between *Parasco* case and the present case is that the former was before the court on a mo-

tion to dismiss, whereas before this Court is a motion for summary judgment. While an allegation of malfeasance may be sufficient for the more lenient requirements of a motion to dismiss, Seidman must present evidence to support an allegation of malfeasance to survive a motion for summary judgment. I find that the record does not support malfeasance by Mutual Life. As discussed earlier, there are no facts in the record demonstrating that Dr. O'Brien acted in a nonobjective manner in his evaluation of Seidman or was influenced in any way by Mutual Life. Nor is there any evidence that Mutual Life intended to deceive Seidman into submitting to a psychiatric evaluation or acted with an improper motive in any way. The contentions of Seidman in this regard are merely arguments and conclusions, and thus do not represent admissible evidence. Therefore, I find that, as a matter of law, no reasonable jury could return a verdict in support of a UTPCPL violation by Mutual Life.

## IV. CONCLUSION

In light of the foregoing, I conclude that Seidman has failed to offer specific facts contradicting those set forth by Mutual Life, thereby failing to show that there is a genuine issue of material fact for trial. I conclude that no reasonable jury could find that Seidman was denied disability benefits in bad faith, fraudulently or deceitfully, or in violation of Pennsylvania consumer protection laws. Accordingly, I will grant the motion of Mutual Life for partial summary judgment.