**Marcella SHEPHERD Plaintiff**

v.

**UNUMPROVIDENT CORPORATION and Provident Life and Accident Insurance Company Defendants**

No. Civ.A. 03–391–DLB.

United States District Court, E.D. Kentucky.

June 8, 2005.

Jeffrey K. Rubin, Kenneth R. Friedman, Friedman, Rubin & White, Bremerton, WA, M. Austin Mehr, Timothy Elijah Geertz, Wesley B. Deskins, Austin Mehr Law Offices, P.S.C., Lexington, KY, for Plaintiff.

Ann Michelle Turner, R. Thaddeus Keal, Turner, Keal & Dallas PLLC, Prospect, KY, for Defendants.

## *ORDER*

BUNNING, District Judge.

This matter is before the Court on Defendants' Motion for Partial Summary Judgment as to Plaintiff's bad faith claims. (Doc. # 14) The case is also before the Court on Defendants' Motion in Limine to exclude the testimony of Plaintiff's proposed expert witness, Mary Fuller. (Doc. # 55) These motions were before the Court at the final pretrial conference, and the parties have since made supplemental

filings on the Motion in Limine. For the reasons set forth herein, the request to exclude Mary Fuller's testimony will be denied, although whether she may offer testimony connected with the multi-state insurance department investigation remains to be determined at further pretrial conference. However, based upon the extent to which Fuller's testimony is now deemed admissible, Defendants' request for summary judgment on the bad faith claims will also be denied.

### A. Motion in Limine to Prohibit Fuller Testimony (Doc. # 55)

Plaintiff has identified Mary Fuller, a former 17–year employee of UNUM and UnumProvident, to offer expert testimony pertaining to insurance industry standards for handling/adjusting disability claims and the processing of Shepherd's claim in particular. Fuller is also identified as offering testimony pertaining to the change in management of individual disability claims starting in approximately 1995 until her involuntary cessation of employment with Defendants in 2001. Specifically, Fuller intends to offer testimony that corporate policies were put in place emphasizing the financial oversight of individual disability lines and specifically the emphasis upon closure or resolution of claims.

Defendants contend that Fuller does not qualify as an expert witness under the *Daubert v. Merrell Dow Pharmaceuticals* standards for admission of expert testimony. Defendants argue that Fuller improperly opines on what are actually legal issues and/or Defendants' subjective intent, and that her testimony is not relevant nor reliable and does not assist the jury to understand the evidence or facts in issue. Defendants offer that expert testimony on whether Shepherd's contract was breached is beyond Fuller's area of expertise because she has no special knowledge to so

opine and because the foundation for this opinion is inadequate. Defendants contend Fuller never worked in Defendants' Tennessee office, and never handled a disability claim file from start to finish. They argue she relies upon so-called industry standards that have no technical or specialized basis, and that she has no formal education in insurance.

Plaintiff responds that Fuller qualifies as an expert in the field of insurance based upon her years of training and experience. She submits that Fuller is competent to provide testimony as to the customs and standards in the insurance industry for adjusting claims. Plaintiff further submits that this is an area of skill and experience not within the realm of the average layperson and is, therefore, helpful to the jury.

■ Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. The Rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) the Supreme Court interpreted FRE 702 as requiring the trial judge to ensure that an expert's testimony is both reliable and relevant to the case at hand. *Id.* at 589, 113 S.Ct. 2786. In *Daubert*, the Court identified a nonexhaustive list of factors to assist courts in evaluating the reliability of the scientific theory or methodology upon which an expert's opinion is based. These include whether the theory or technique can be or has been tested; whether it has been subjected to peer review; whether it has a known or potential rate of error; and whether it has general acceptance in the

scientific community. *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786.

*Daubert's* gatekeeping obligation applies not only to "scientific" testimony, but to all expert testimony. In *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court extended *Daubert* to non-scientific expert testimony, requiring that, "where such testimony's factual basis, data, principles, methods, or their application" are called sufficiently into question, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire*, 526 U.S. at 149, 119 S.Ct. 1167. Thus, *Daubert's* admissibility considerations are relative ones, depending upon the type of expert and nature of the proffered testimony. They serve as a reminder to trial courts to ensure that expert testimony be relevant to the issues to be decided, meet the required standards, and be at least potentially helpful to the trier of fact.

■ The Court concludes that Fuller's extensive background and experience in the insurance industry qualify her to testify as an expert in this case, despite her lack of formal education in the field of insurance. *See First Tennessee Bank National Association v. Barreto*, 268 F.3d 319, 335 (6th Cir.2001)(expert's testimony on banking practices was based upon his "own practical experiences throughout forty years in the banking industry," and thus his opinions were not such as to "lend themselves to scholarly review or to traditional scientific evaluation"). Fuller has provided expert testimony in several cases involving challenges to how an insurance claim was handled. Indeed, during her tenure with Unum, she was also identified on some occasions by Defendants as their designated witness on claims practices and procedures, a fact certainly detracting from the merits of Defendants' challenge to her expertise.

That Defendants have certain policies and practices for adjustment of claims as does the industry generally, are matters not typically considered as being in the common parlance of jurors and would, therefore, be helpful to them. Fuller will offer testimony as to her review and the claims adjusting process that took place on Shepherd's claim, and how that processing and conduct by Defendants compared with industry standards and its own standards.

In addition, Fuller was also employed with Defendants during a time when changes to oversight and management of how individual disability claims are adjusted was allegedly implemented. Specifically, and recognizing that Defendants dispute this testimony, Fuller claims high-level management started emphasizing that claims for benefits be denied for reasons of offsetting revenue losses, rather than based upon the merits of a particular claim. Unlike some expert witnesses who have information related to general standards and policies in particular fields or industries, Fuller is in a somewhat unique position of having information from first-hand observation and work experience with Defendants. She will be permitted to testify to this information as being within her personal knowledge. Such information is also relevant to Plaintiff's bad faith claim.

Defendants' challenge to such matters as the depth of Fuller's hands-on experience in claims adjusting, or her source and interpretation of industry practices and procedures do not preclude Fuller's testimony, but instead are areas for cross-examination or presentation of countering defense witnesses. This includes Defendants' challenge to the temporal and geographic relevancy of Fuller's testimony relating to absorbing revenue losses in the

individual disability line. *See Daubert,* 509 U.S. at 596, 113 S.Ct. 2786 (noting that vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence).

Upon considering the proposed testimony of Mary Fuller, and reviewing the parties' briefs on this point, the Court concludes that Mary Fuller is a reliable witness whose proffered testimony meets the case law and Rule 702 requirements for admissibility of expert proof. However, this conclusion is limited at this point to Fuller's information and opinions concerning claims adjusting/management practices used by Defendants, disability claims review standards used by Provident and the industry generally, and her review of Shepherd's claim file. The filings suggest Plaintiff also seeks to have Fuller offer testimony about the investigation of Defendants' practices in handling disability claims conducted by the state insurance departments. The admissibility of this type of evidence will be reviewed and taken up by the Court with the parties at an upcoming continued pretrial conference, set by separate order entered concurrently herewith.

### B. Defendants' Motion for Partial Summary Judgment (Doc. # 14)

■ Plaintiff asserts both common law and statutory bad faith claims in this first-party bad faith case. To pursue a bad faith claim in Kentucky, whether common law or statutory, requires Plaintiff establish (1) Provident's obligation to pay; (2) that Provident lacked a reasonable basis for failing to immediately pay; (3) that Provident knew it had no reasonable basis to delay payment or acted in reckless disregard as to whether such a basis existed. *Curry v. Fireman's Fund Ins. Co.,* 784 S.W.2d 176, 178 (Ky.1989). *Curry* recognized that in certain instances an insurer should be held accountable for its conduct beyond that of contract damages.

> In this society, first party insurance coverage against a host of risks is recognized as essential. From cradle to grave individuals willingly pay premiums to insurance companies to obtain financial protection against property and personal loss. Without a reasonable means to assure prompt and bargained-for compensation when disaster strikes, the peace of mind bought and paid for is illusory.

*Id.* at 178. Proof of such conduct is, however, no small task, as the insured must be able to point to evidence meeting the three-fold test above. Moreover, for a case to be submitted to a jury, there must be evidence sufficient to warrant punitive damages; that is, to take the claim beyond that of a contract dispute and into the realm of tort law.

> The essence of the question as to whether the dispute is merely contractual or whether there are tortious elements justifying an award of punitive damages depends first on whether there is proof of bad faith and next whether the proof is sufficient for the jury to conclude that there was conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. This means there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to warrant submitting the right to award punitive damages to the jury.

*Wittmer v. Jones,* 864 S.W.2d 885, 890 (Ky.1993) (internal citations omitted).

Defendants maintain they are entitled to summary judgment on Plaintiff's bad faith claim. This motion and the three-prong test from *Curry* were discussed at the final

pretrial conference. The first prong—obligation to pay—is not disputed between the parties. They acknowledge that Shepherd and Provident entered into an "own occupation" disability policy contract creating a legal relationship between them obligating Provident to pay provided the policy conditions are satisfied.

However, Defendants contend Plaintiff is unable to come forth with evidence sufficient to satisfy the second and third prongs of the test. Defendants submit Shepherd has no evidence that Defendants lacked a reasonable basis for failing to immediately pay her or, consequently, that they knew there was no reasonable basis or acted recklessly in this regard. At this stage of the proceedings, the Court must draw all inferences in a light most favorable to Plaintiff as the nonmoving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Defendants contend Shepherd's claim file, and specifically the IME done by Dr. Terry Troutt and the records review by Dr. Mark Ross, evidence a reasonable basis for not immediately paying Plaintiff's claim. Defendants submit the IME by Dr. Troutt indicated Plaintiff was capable of engaging in her occupation, and so supported the denial of benefits. According to Defendants, the claim was therefore fairly debatable on the facts, and so there is no evidence of bad faith under *Sculimbrene v. Paul Revere Ins. Co.,* 925 F.Supp. 505, 508 (E.D.Ky.1996)(no evidence of bad faith by insurer's reliance upon opinion of IME, which opinion made the claim fairly debatable on its facts).

Each case, of course, turns upon its own facts. In *Sculimbrene* plaintiff alleged total disability under an own occupation policy due to an anxiety disorder, while at the same time was pursuing a civil gender discrimination claim seeking to be reinstated to her prior full-time employment. And plaintiff did not challenge the opinions of the evaluating psychiatrist but instead essentially argued her treating doctors' opinions were required to be accepted. In determining there was no evidence of bad faith, the district court in *Sculimbrene* noted it is not bad faith to have an IME done, nor is it bad faith for an insurer to investigate a claim, part of which included speaking with claimant's treating doctors.

All of these general principles hold true. But in Shepherd's case, the challenges to the insurer's conduct are different and more specific than in *Sculimbrene.* Here, Shepherd submits there is sufficient evidence to convince the jury that Defendants did not have a reasonable basis for denying the claim. In *Sculimbrene* the merits of the IME's opinions were not challenged as they are here. Shepherd contends that Dr. Troutt's opinions do not, in fact, support that she can return to her own occupation. Shepherd protests it was unreasonable for Provident to rely upon Dr. Troutt's statements because they include a recommendation of rehabilitative care and treatment, include physical limitations that would not permit her to complete the substantial and material duties of her occupation, and were based upon inadequate information from Defendants as to the requirements of her job.

■ By way of anticipated testimony from Mary Fuller, Plaintiff offers specific challenges to the reasonableness of Defendants' processing of Shepherd's claim for benefits. This includes Fuller's critique of Dr. Troutt and Dr. Ross's opinions and the use of and reliance placed upon them by

Defendants. Such testimony is sufficient to create fact issues for the jury's determination on whether Defendants lacked a reasonable basis for failing to pay.

Moreover, Fuller's testimony as to the professed unreasonable manner in which Shepherd's claim was adjusted, along with her testimony as to Defendants' change in management focus and policies to that of denying claims as part of its financial plan, also provide the basis and support for Plaintiff's presentation of the third requirement—whether Defendants knew there was no reasonable basis to delay payment or acted recklessly about whether a reasonable basis existed. Plaintiff desires to use at trial various documents related to the investigation done by the state insurance departments. The details of that evidence remain to be taken up by the Court at an upcoming conference. However, without regard to whether that multi-state investigation is or is not admissible, Fuller's expected testimony is sufficient to overcome summary judgment at this point.

Fuller will testify about the practice standards for fair handling of insurance claims and in what manner Defendants' processing failed to comply with those standards. She will testify as to the reasonableness of these actions and Defendants' alleged motivations for such actions. Though the jury may ultimately find Defendants did not act in bad faith in the handling of Shepherd's claim, that is not the question presently before the Court. Rather, it is whether such testimony from Fuller is sufficient for the jury to infer Defendants knew or acted recklessly as to whether denial of the claim was without reasonable basis. Upon review of the evidence relied upon by the parties, and briefs in support of their positions on this issue, the Court concludes Plaintiff has identified sufficient evidence for the jury to infer this third requirement and therefore that Defendants acted in bad faith.

Finally, as to Plaintiff's statutory claim specifically, even if the claim is fairly debatable, the insurer must debate the matter "fairly" and is not entitled to dismissal of a debatable bad faith claim as a matter of law. *See Farmland Mutual Ins. Co. v. Johnson*, 36 S.W.3d 368, 375 (Ky.2000). The examination by expert witness Fuller of the claim file and her opinions as to Defendants' adherence to standards for adjusting a claim in good faith are sufficient to present to the jury whether Defendants debated the matter "fairly," thus requiring denial of summary judgment on the statutory claim on this basis as well.

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion for Partial Summary Judgment (Doc. # 14) is **DENIED**; and,

(2) Defendants' Motion in Limine to exclude the testimony of Mary Fuller (Doc. # 55) is **DENIED**, though the issue of whether Fuller may testify as to the multi-state insurance department investigation is **TAKEN UNDER ADVISEMENT** pending the upcoming further pretrial conference.