Billy J. CURRY and Ethel M. Curry, d/b/a Bill & Mae's Jeans, Appellants,

v.

FIREMAN'S FUND INSURANCE COMPANY, Appellee.

No. 88-SC-495-DG.

Supreme Court of Kentucky.

Dec. 21, 1989.

Joe B. Campbell, Thomas N. Kerrick, Campbell, Kerrick & Grise, Bowling Green, Robert L. Milby, London, for appellee.

Joel R. Smith, Robert L. Wilson, Wilson & Smith Law Offices, Jamestown, for appellants.

LAMBERT, Justice.

Upon a jury verdict, appellants recovered judgment against appellee for consequential and punitive damages for the bad faith breach of a business insurance policy. At the time of trial, the law which prevailed and defined the allowable recovery for the bad faith breach of a first party insurance contract was set forth in *Feathers v. State Farm Fire and Casualty Company*, Ky. App., 667 S.W.2d 693 (1983). On appeal, the Court of Appeals reversed the judgment of the trial court and disallowed the recovery. Relying on this Court's decision in *Federal Kemper Insurance Company v. Hornback*, Ky., 711 S.W.2d 844 (1986), an opinion rendered subsequent to entry of judgment in the trial court, the Court of Appeals held that "there is no [legal] basis for recovery of consequential or punitive damages in a case such as this...." We granted discretionary review to reconsider our holding in *Federal Kemper* and now reverse the Court of Appeals.

At the time of commencement of a retail merchandising business, appellants contacted Nancy R. Day, a partner in the Barger Insurance Agency, and sought a "full coverage" insurance policy. Ms. Day completed the application on a form provided by appellee, submitted the application to appellee, and in due course, a policy was issued to appellants. Upon receipt of the policy, neither Ms. Day nor appellants reviewed it to determine whether it provided the coverage sought.

Shortly after the policy was issued, appellants' store was burglarized and $13,500 worth of merchandise was stolen. Appellants made a claim against appellee for the loss and payment was refused. At that time it was discovered that appellee had issued a standard business owner's policy which did not include theft coverage rather than an "all risks" policy which was available from appellee and would have included theft coverage as requested by appellants.

After making repeated demands and unsuccessfully seeking payment from appellee for the amount of the burglary loss, appellants brought an action against Barger Insurance Agency and appellee for the value of the stolen merchandise, consequential damages for lost profits caused by the failure to timely pay the claim and punitive damages.

Evidence developed during pre-trial proceedings convincingly established two important facts which significantly influenced the future course of the litigation. First, the trial court held that at all relevant times, Nancy Day, the insurance agent with whom appellants had dealt, was appellee's agent for the purpose of binding and writing the insurance policy in question. Second, the trial court held that omission of theft coverage from the policy was as a result of a mutual mistake and that the insurance policy should be reformed to reflect the intention of the parties. *See Spratt v. Carroll,* Ky., 399 S.W.2d 291 (1966).

The case proceeded to trial and the trial court reaffirmed its earlier ruling by granting a directed verdict in appellant's favor for the value of the stolen merchandise. Submitted to the jury for its determination was whether appellants were entitled to recovery in the form of consequential damages for lost profits and punitive damages for bad faith refusal to pay the underlying claim. A verdict was returned and appellants were awarded the sum of $50,000 for consequential damages and the sum of $15,000 for punitive damages. Judgment was entered for these sums plus the amount insured under the policy for a total judgment in their favor of $78,500.

At the time this case was tried the prevailing law in Kentucky was *Feathers v. State Farm Fire and Casualty Co., supra.* Not until 1986 did we overrule *Feathers* by our decision in *Federal Kemper Insurance Co. v. Hornback, supra.* Thus, in the absence of proper preservation, as discussed in *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984), it would be improper to consider the applicability of *Federal Kemper.* However, our examination of the record reveals that appellee objected to submitting the case under *Feathers* and insisted that *Feathers* should not be followed. The issue was thus preserved and the Court of Appeals properly entertained it on the merits.

As shown by the evidence, the insurance policy as written contained a mutual mistake. Available coverage requested by appellants was omitted by appellee's agent. Shortly after the loss the mistake was discovered and appellants demanded compensation pursuant to the coverage provision which should have been included. Despite appellants' demand for payment and insistence that they could not resume business operations without the insurance proceeds, all such demands were refused. Thereafter appellants commenced litigation. Documents produced and the testimony of Nancy Day established the agency relationship and the agent's mistake beyond any reasonable dispute. Nevertheless, appellee continued to refuse payment. On two occasions the trial court determined that coverage existed. This was affirmed by the Court of Appeals and review of its determination was not sought in this Court.

From the foregoing we are persuaded that the verdict of the jury was based upon compelling evidence. Upon initial presentation of appellants' claim appellee may have legitimately believed coverage was not present. Further investigation, however, rendered such a view untenable. Nevertheless, appellee maintained its denial and permitted appellants to incur additional financial loss.

It is unnecessary to engage in a presumptuous analysis of the prior authorities of the courts of Kentucky and other jurisdictions on this issue. For detailed discussions of the issues involved we refer to the Court of Appeals decision in *Feathers v. State Farm* and this Court's majority and dissenting opinions in *Federal Kemper v. Hornback* and the authorities cited therein. The issue of the bad faith breach of a first party insurance contract has been fully considered by our courts. Although we are reluctant to abandon settled precedent, a majority of this Court is now convinced

that our decision in *Federal Kemper* was improvident and should be overruled.

 The facts of this case well illustrate the desirability of permitting recovery in tort when an insurance company acts in bad faith in dealing with its own insured. Nothing in *Feathers* suggested that an insurance carrier must pay bogus claims or abandon legitimate defenses. Tort liability was allowed only when "there is no substantial or credible evidence that the policyholder directly or indirectly" caused or contributed to the loss. "[T]he proceeds of the policy may not be withheld unless there is a substantial breach of the contract by the policyholder." *Feathers*, 667 S.W.2d at 696. The essence of a claim for first party bad faith is exposure of the insurance carrier to damages recoverable in tort. Such a claim should not be lightly entertained in view of the contractual nature of the parties' original relationship. Justice Leibson's dissenting opinion in *Federal Kemper* contains an excellent statement of the applicable principles involved herein and we incorporate those views in this opinion. See *Federal Kemper Insurance Co. v. Hornback*, Ky., 711 S.W.2d 844, 846 (Leibson, J., dissenting).

Our decision in *Federal Kemper* abolished tort liability to a policyholder, regardless of the conduct of the insurance carrier. Such a rule permitted an insurance carrier to deny payment without any justification, attempt unfair compromise by exploiting the policyholder's economic circumstance, and delay payment by litigation with no greater possible detriment than payment of the amount justly owed plus interest.

In this society, first party insurance coverage against a host of risks is recognized as essential. From cradle to grave individuals willingly pay premiums to insurance companies to obtain financial protection against property and personal loss. Without a reasonable means to assure prompt and bargained-for compensation when disaster strikes, the peace of mind bought and paid for is illusory. The rule in *Federal Kemper* is unjust and, despite its recency, should not be perpetuated.

Throughout the history of Anglo–American law, the most important decisions society have made have been entrusted to duly empaneled and properly instructed juries. Decisions as to human life, liberty and public and private property have been routinely made by jurors and extraordinary confidence has been placed in this decision-making process. We are confident that jurors deciding issues of bad faith will act responsibly and refrain from awarding damages in tort except in those circumstances where such is clearly warranted and then only in appropriate amounts.

For the foregoing reasons, the opinion of the Court of Appeals is reversed and the judgment of the trial court reinstated.

STEPHENS, C.J., and COMBS, LEIBSON and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., files a separate concurring opinion in which LEIBSON, J., joins.

VANCE, J., dissents by separate opinion in which GANT, J., joins.

STEPHENS, Justice, concurring.

I support the principle that recovery in tort should be available to an insured when its insurance company refuses in bad faith to pay on a claim. However, causes of action for tortious breach of contract must be carefully circumscribed, as set forth in Justice Leibson's dissent in *Federal Kemper*. An insured does not avail himself of this cause of action by merely alleging bad faith due to an insurance company's disputing or delaying payment on a claim. An insured must prove that the insurer is obligated to pay under the policy, that the insurer lacks a reasonable basis for denying the claim, and that the insurer either knew there was no reasonable basis to deny the claim or acted with reckless disregard for whether such a basis existed. An insurer's refusal to pay on a claim, alone, should not be sufficient to trigger the firing of this new tort.

LEIBSON, J., joins in this concurring opinion.

VANCE, Justice, dissenting.

Respectfully, I dissent. Until now the law, as expounded by the highest court of

this state, has never allowed the recovery of punitive damages for a breach of contract. *Cumberland Telephone and Telegraph Co. v. Cartwright Creek Telephone Co.*, Ky., 108 S.W. 875 (1908); *General Accident Fire and Life Assurance Corp. v. Judd*, Ky., 400 S.W.2d 685 (1966). This principle of law was emphatically restated as recently as 1986 in *Federal Kemper Ins. Co. v. Hornback*, Ky., 711 S.W.2d 844 (1986).

Nothing has changed since 1986 to cause us now to overrule this long-standing principle of law except perhaps a change in the membership of the court. I firmly believe that an appellate court should adhere to long-established precedent unless there is some urgent or compelling reason to depart therefrom which destroys or completely overshadows the reason behind the precedent. A change of the law brought about only by reason of a change in the membership of the court reduces us to a government of men rather than a government of laws, and every judicial election could result in a reversal of long-established judicial precedent.

Citizens in a civilized society cannot lead orderly lives or make plans for the future unless there is some stability in the law.

This is not to say that circumstances cannot change to such an extent as to outmode previous decisions and mandate new ones. But circumstances have not changed here.

Furthermore, there is no need to overrule an established principle of law simply to permit a policyholder to maintain an action against his insurer for denying payment without justification or for attempting an unfair compromise through delay or by exploiting the policyholder's economic circumstances. A policyholder treated unfairly by an insurance company in the settlement of his claim already has two separate avenues to recover damages by bringing suit pursuant to K.R.S. 304.12–230, the Unfair Claims Settlement Practice Act, and K.R.S. 367.220(1) and 367.170, the Consumer's Protection Act. These statutes were held to afford relief to policyholders against their own insurance company for unfair settlement practices. *State Farm Mutual Auto Insurance Co. v. Reeder*, Ky. 763 S.W.2d 116 (1989); *Stevens v. Motorists Mutual Insurance Co.*, Ky., 759 S.W.2d 819 (1988). Because the appellants here already had available to them a complete statutory remedy, there is no real need to upset long established precedent and convert a breach of contract into a tort just to allow relief which was already otherwise available.

Since a policyholder already has a full and complete statutory remedy against an insurance company which treats him unfairly, the real purpose and effect of the majority opinion is to establish a precedent for the conversion of a "breach of contract action" into a "tort action" with its attendant remedy of "punitive damages."

If a breach of contract can be converted into a tort with a veritable Eldorado of punitive damages to be mined, it does not take much imagination to anticipate that in the future every contract breach will be alleged to have been breached in bad faith.

It is true that the General Assembly in 1988 enacted K.R.S. 411.184(4) which provides that: "In no case shall punitive damages be awarded for breach of contract." However, a court which is capable of converting a breach of contract into a tort will have no difficulty in deciding that K.R.S. 411.184(4) does not apply to the tort so created. I regard the majority opinion as a judicial announcement that such a result can be anticipated.

This is the case where tortious breach of contract gets its foot in the door, so to speak, but will be the underpinning for future cases, where this new tort and its twin brother, the tort of outrageous conduct, also newly created by this court, will move in and crowd out still other long-established legal principles.

GANT, J., joins in this dissenting opinion.