**GUARANTY NATIONAL INSURANCE COMPANY, Appellant/Cross–Appellee,**

v.

**Albert GEORGE, Pearl George, Karen Miller, and Steven Jackson, Appellees/Cross–Appellants.**

Nos. 96–SC–000501–DG, 96–SC–000512–DG.

Supreme Court of Kentucky.

Oct. 2, 1997.

As Amended Nov. 14, 1997.

John D. Cole, Matthew J. Baker, Dov Moore, Stefan R. Hughes, Cole, Moore & Baker, Bowling Green, for Guaranty National Insurance Company.

Charles A. Saladino, David Vance Oakes, Paducah, for Albert George, Pearl George, Karen Miller and Steven Jackson.

M. Austin Mehr, Kentucky Academy of Trial Attorneys, Lexington, Michael A. Breen, Bowling Green, Eugene R. Anderson, John A. MacDonald, New York City, Amy Bach, United Policyholders, San Francisco, CA, for amicus curiae.

SID EASLEY, Special Justice.

Guaranty National Insurance Company ("Guaranty National") appeals from a decision of the Court of Appeals holding that Albert George, Pearl George, Karen Miller, and Steve Jackson (collectively "the Georges") are entitled to pursue claims for bad faith dealing and violations of the Unfair Claims Settlement Practices Act, KRS 304.12–230, against Guaranty National. The Georges, as well, appeal from the Court of Appeals decision affirming the trial court's order denying them access to an attorney's opinion letter requested by Guaranty National regarding the Georges' insurance coverage. For the reasons to be stated, we reverse the decision of the Court of Appeals.

The facts of this case are essentially not in dispute. In May 1990, the Georges (specifically Karen Miller) contacted J.C. Riley, d/b/a Bradshaw Insurance Agency, to procure commercial insurance coverage for a 1988 Volvo truck used in a mail service in the Hazel–Paducah area. Surprisingly, the George family owned two 1988 Volvo trucks. The second truck was owned by Albert and Pearl George's son, Billy George, who operated a mail service in the Hodgensville area. Billy George is not a party to this action. Riley secured a policy from Guaranty National which correctly indicated that the Georges' truck was to be used to deliver mail in the Hazel–Paducah area, and the risk and rate evaluation was determined on that basis. However, due to an admitted mistake by Riley, the "wrong" truck was listed on the face of the insurance policy. The details of why this occurred are rather complex, but simply, the Volvo truck, identified by its vehicle identification number (VIN), listed in the policy was that owned by Billy George.

In August 1991, the George's truck, which was not listed on the policy but used on the Hazel–Paducah route, was involved in an accident with another vehicle in Marshall County, which tragically took the life of Harold Creason.

On January 28, 1992, the Creason estate filed a wrongful death action against the Georges. Guaranty National, by letter, informed the Georges that it would provide counsel for them but reserved the right to deny coverage should the facts indicate the insurance policy did not cover the vehicle involved. Facing payment of a substantial claim without coverage, the Georges filed an action alleging bad faith on the part of Guaranty National. Guaranty National counterclaimed, requesting a declaration of rights on the coverage question.

On October 21, 1992, the Calloway Circuit Court granted partial summary judgment in favor of the Georges on the coverage issue. It found that a mutual mistake existed and that the insurance contract should be equitably reformed. The court opined that the

parties, in fact, intended to insure the 1988 Volvo truck involved in the accident.

Only a few days later, and specifically on November 4, 1992, Guaranty National settled the wrongful death claim filed by the Creason estate and obtained a release of Creason's claim against the Georges. Guaranty National, however, appealed the trial court's ruling on coverage. In a 1994 opinion, to which this Court denied discretionary review, the Court of Appeals affirmed the trial court.

With that matter resolved, the Georges pursued the instant bad faith action. The Calloway Circuit Court granted Guaranty National's motion for summary judgment and dismissed the bad faith claim, finding that the legal questions of reformation and agency raised by Guaranty National in filing the declaration of rights action were "fairly debatable." *Empire Fire & Marine v. Simpsonville Wrecker,* Ky.App., 880 S.W.2d 886 (1994). The court further concluded that, "It should not be left to a jury to determine whether the legal principles involved are 'fairly debatable'."

On appeal, the Court of Appeals reversed and held that the Georges were entitled to pursue the bad faith action. The Court reasoned that since the trial court had initially held that the Georges were entitled to judgment as a matter of law on the coverage question, then *a fortiori,* "Given the trial court's own language in the partial summary judgment, we are unable to agree that the Georges' claim was 'fairly debatable' as a matter of law." *George, et al. v. Guaranty National Insurance Company,* 95–CA–1577–MR (Slip Opinion March 8, 1996).

The Court of Appeals further held that the trial court properly denied the Georges discovery of a letter issued to Guaranty National by attorney Burke Terrell concerning Guaranty National's liability under the Georges' policy. The court concluded the letter was privileged under the traditional attorney-client privilege in the absence of any evidence indicating the contemplation of a tortious act on behalf of Guaranty National. "To develop an exception in bad faith cases against insurers would impede the free flow of information and honest evaluation of claims. In the absence of fraud or criminal

activity, an insurer is entitled to the attorney-client privilege to the same extent as other litigants." *Id.* Both parties appealed and this Court granted discretionary review.

The Georges believe that Guaranty National's decision to defend under a reservation of rights amounted to outrageous conduct in that the undisputed facts indicated a mere clerical error on the face of the policy. Likewise, this was not a case of "first impression", and the well-settled law of reformation of contracts as it was applied to the facts of this case was crystal clear. The Georges conclude that there was no genuine dispute on the law or facts, and the mental anguish they suffered by not knowing whether they had coverage in a significant lawsuit filed against them was, in fact, outrageous conduct on the part of Guaranty National.

Guaranty National, on the other hand, argues that once the trial court determined it owed coverage under the policy, it immediately settled the claim. Specifically, the wrongful death suit was filed on January 28, 1992, and the claim was settled by Guaranty National on November 4, 1992. Guaranty National also argues that there was a question concerning whether the acts of agent Riley could bind the company. Guaranty National states,

> providing of a defense and the complete indemnification of a claim under a policy of insurance is not indicative of evil motive or reckless indifference ... it is a clear indication of good faith, caution, and prudence. If filing a reservation of rights is the basis of bad faith, then the flood gates for litigation are wide open when an insurer even dares to raise the coverage question, let alone litigate it.

We turn first to the issue of whether Guaranty National's conduct was tantamount to bad faith in violation of the Unfair Claims Settlement Practices Act, KRS 304.12–230. In *Wittmer v. Jones,* Ky., 864 S.W.2d 885 (1993), this Court enunciated a test for ascertaining whether a private cause of action for tortious misconduct justifying a claim of bad faith can exist.

> "[A]n insured must prove three elements in order to prevail against an insurance

company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with such reckless disregard for whether such basis existed.... [A]n insurer is ... entitled to challenge a claim and litigate it if the claim is fairly debatable on the law or the facts."

*Id.* at 890. (quoting *Federal Kemper Ins. Co. v. Hornback,* Ky., 711 S.W.2d 844, 846 (1986) (Leibson, J., dissenting), *cited with approval in Curry v. Fireman's Fund Ins. Co.,* Ky., 784 S.W.2d 176 (1989)); *see also Empire Fire & Marine, supra.*

However, before the cause of action exists in the first place, there must be evidence sufficient to warrant punitive damages.

The essence of the questions as to whether the dispute is merely contractual or whether there are tortious elements justifying an award of punitive damages depends first on whether there is proof of bad faith and next whether the proof is sufficient for the jury to conclude that there was 'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' (citations omitted)

*Wittmer, supra* at 890.

■ In *Wittmer,* we were dealing with a case where the insurer refused to pay because it could not agree with its insured as to the dollar amount of the loss. Here, by contrast, the insurer paid, but challenged the legitimacy of coverage by filing a declaration of rights action. Once the trial court equitably reformed the contract, Guaranty National settled the claim within a very short period of time.

The trial court in this case was faced with a policy that on its face required reformation, in that it insured a truck that was not involved in the accident. Further, there were legal questions of agency and whether the agent's negligence was a factor in the lack of coverage. Though in retrospect these issues may appear clear and undebatable, when there is an ambiguity or suspected material error on the face of a policy that would exclude coverage, we do not believe it is bad faith for a party to ask a court to either reform or decline to reform the policy.

We recognized in *Wittmer, supra,* that to find bad faith there is a threshold, and the evidence must be sufficient to establish that a tort has occurred. *Id.* at 890. We are of the opinion that Guaranty National's conduct in this case does not meet that threshold and rise to the level required to sustain an action for bad faith. Guaranty National provided a defense for the Georges and the claim proceeded without delay. Simultaneously with the lawsuit, Guaranty National chose to maintain an independent action to determine its coverage liability. Under this state of facts, we are not inclined to deprive an insurer of its election to explore its legal remedy. *Empire Fire & Marine, supra,* at 888.

■ Some may argue that the insurer, by notifying its insured that it is defending under a reservation of rights and filing a declaratory judgment action, is automatically absolved of bad faith. We do not so hold. Clearly, one can envision factual situations where an insurer could abuse its legal prerogative in requesting a court to determine coverage issues. Those may well be addressed through a motion under Civil Rule 11 or, in certain circumstances, an action for bad faith.

The Georges' have also appealed from the Court of Appeals decision denying them access to an opinion letter authored by attorney Burke Terrell purportedly concerning Guaranty National's liability. Since this Court has determined that the Georges have not produced evidence sufficient to support a bad faith action against Guaranty National, this issue necessarily becomes moot and does not require further discussion.

The decision of the Court of Appeals is reversed and the order of the Calloway Circuit Court granting summary judgment in favor of Guaranty National Insurance Company is reinstated.

All concur.

COOPER, J., concurs by separate opinion in which JOHNSTONE, J., joins as it relates to CR 11.

GRAVES, J., not sitting.

COOPER, Justice, concurring.

I concur in the result reached by the majority in this case, *i.e.*, reversal of the decision of the Court of Appeals and reinstatement of the summary judgment entered by the Calloway Circuit Court. However, I would do so because the factual allegations in this case do not state a cause of action under any common law or statutory theory. The operative facts are these:

Guaranty National Insurance Company had issued a policy of insurance covering a 1988 Volvo truck owned by Appellees Albert George, Pearl George and Karen Miller. On August 21, 1991, a 1988 Volvo truck owned by the Georges and Miller and operated by their employee, Appellee Steven Jackson, was involved in a two-car collision in which the operator of the other vehicle was killed. The estate of the deceased driver subsequently filed a wrongful death action against the Appellees, who referred the case to Guaranty National for defense and payment under the liability coverage of the policy, if necessary. The George family owned two 1988 Volvo trucks. Unfortunately, the local independent agent who submitted the application to Guaranty National on behalf of Appellees entered the wrong Volvo's vehicle identification (VIN) number on the application. When it realized that the VIN number of the vehicle involved in the accident was a different number from that on the policy, Guaranty National notified Appellees of its intent to defend under a reservation of rights and sought a declaratory judgment as to whether its policy provided coverage for the Volvo involved in the accident. Appellees responded with this action alleging "bad faith" on the part of Guaranty National and violation of the Unfair Claims Settlement Practices Act (UCSPA), KRS 304.12–230. Subsequently, the trial judge ruled that the improper VIN number was the result of a mutual mistake and reformed the insurance contract to reflect the correct VIN number. That decision was affirmed on appeal. Meanwhile, on No-

vember 4, 1992, two weeks after entry of the declaratory judgment and less than ten months after suit was filed, Guaranty National settled the tort claim of the deceased driver's estate.

Four categories of "bad faith" claims against insurance companies have been recognized in this jurisdiction.

(1) A common law "third-party bad faith" claim occurs when a liability insurer's failure to settle a tort claim against its insured results in a judgment in excess of the insured's policy limits. *Eskridge v. Educator and Executive Insurers, Inc.*, Ky., 677 S.W.2d 887 (1984); *Manchester Insurance & Indemnity Co. v. Grundy*, Ky., 531 S.W.2d 493 (1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 82 (1976). The settlement by Guaranty National of the tort claim against Appellees prior to judgment *ipso facto* eliminated any cause of action based on common law "third-party bad faith."

(2) A common law "first-party bad faith" claim arises when an insurer refuses to pay the claim of its own insured under a first-party coverage provision of its policy. *Curry v. Fireman's Fund Insurance Co.*, Ky., 784 S.W.2d 176 (1989). Since Appellees were not making a first-party claim for payment under the policy, this theory also has no application to this case.

(3) In *Stevens v. Motorists Mutual Insurance Co.*, Ky., 759 S.W.2d 819 (1988), we recognized a cause of action against an insurer for an "unlawful act" as defined in the Consumer Protection Act. KRS 367.170. However, the policy in question here was a commercial liability policy and the Consumer Protection Act applies only to goods or services purchased primarily for personal, family or household purposes. KRS 367.220(1); *cf. Cohen v. North Ridge Farms, Inc.*, 712 F.Supp. 1265 (E.D.Ky.1989).

(4) Lastly, we have recognized a statutory "bad faith" action against an insurance company for violation of the UCSPA. *State Farm Mutual Automobile Insurance Co. v. Reeder*, Ky., 763 S.W.2d 116 (1988). The UCSPA contains fourteen subsections specifying particular acts as unfair claims settlement practices. The statute is intended to

benefit damage claimants by requiring insurance companies to act reasonably in negotiating settlements of their claims. The four subsections of KRS 304.12–230 relied upon by Appellees clearly apply to damage claimants, not liability insureds:

.     .     .     .     .

(4) *Refusing to pay claims* without conducting a reasonable investigation based upon all available information;

(5) Failing to affirm *or deny* coverage of claims within a reasonable time after proof of loss statements have been completed;

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered *in actions brought by such insureds.* (Emphasis added.)

Nothing in these provisions could be interpreted to inhibit an insurer from seeking a declaratory judgment to determine whether coverage is provided for a particular vehicle involved in an accident.

Nor do I agree with the majority that this case might be the proper subject of a CR 11 motion. That rule does not provide substantive rights to litigants, but is a procedural rule designed to curb abusive conduct in the litigation process. *Clark Equipment Co. v. Bowman,* Ky.App., 762 S.W.2d 417 (1988). The damages permitted by the rule are in the nature of reasonable expenses including reasonable attorney fees. Good or bad faith is not the issue. *Louisville Rent–A–Space v. Akai,* Ky.App., 746 S.W.2d 85 (1988). The issue is whether the offending pleading or motion was reasonable under the circumstances. *Clark Equipment Co. v. Bowman, supra,* at 420.

Neither the filing of the declaratory judgment action nor the taking of the appeal could be characterized as a wrongful use of civil proceedings. *Compare Prewitt v. Sexton,* Ky., 777 S.W.2d 891 (1989); *Mapother & Mapother, P.S.C. v. Douglas,* Ky., 750 S.W.2d 430 (1988), *cert. denied,* 488 U.S. 854, 109 S.Ct. 142, 102 L.Ed.2d 114 (1988). *Restatement (Second) of Torts,* §§ 674–681B. Although most such actions appear to be prosecuted against attorneys, *see also Raine v. Drasin,* Ky., 621 S.W.2d 895 (1981), *Hill v. Willmott,* Ky.App., 561 S.W.2d 331 (1978), and *Rose v. Davis,* 288 Ky. 674, 157 S.W.2d 284 (1941), the cause of action is also maintainable against the client. Section 674 of the *Restatement* refers to the potential defendant of such an action as "One who takes an active part in the initiation, continuation or procurement of civil proceedings against another...." *Cf. Williams v. Central Concrete Inc.,* Ky.App., 599 S.W.2d 460 (1980). However, to prevail in an action for wrongful use of civil proceedings, the plaintiff would have to prove both an absence of probable cause, *Restatement, supra,* § 675, *and* that the proceedings were initiated or continued primarily for a purpose other than that of securing the proper adjudication of the claim on which they are based. *Id.,* § 676; *cf. Raine v. Drasin, supra,* at 902. Although Appellees claim lack of probable cause (a dubious assertion since the trial judge had to reform the contract in order to rule in their favor), they make no claim that the declaratory judgment action was commenced for any purpose other than to adjudicate whether Guaranty National owed a defense and liability coverage for the claims arising out of this accident.

Finally, although the complaint appears to allege a breach of contract, the contract of insurance in this case only required Guaranty National to provide Appellees with a defense to the tort action and to pay any judgment up to its policy limits. A defense was provided and the tort claim was settled before judgment. Nothing in the contract precludes either party from seeking a judicial construction of its terms.

For these reasons, I deem it unnecessary to address the merits of Appellees' "bad faith" claim and would simply reverse the Court of Appeals because Appellees' claims against Guaranty National do not state a cause of action.

JOHNSTONE, J., concurs in so much of this opinion as it relates to CR 11.