RENDERED:  DECEMBER 6, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0111-MR

OLD REPUBLIC AEROSPACE INC.                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE A. C. MCKAY CHAUVIN, JUDGE
ACTION NO. 18-CI-000018 & 19-CI-003742


LOUISVILLE AVIATION, LLC AND
MICHAEL PRATT                                                      APPELLEES

AND


NO. 2023-CA-0187-MR


LOUISVILLE AVIATION, LLC AND
MICHAEL PRATT                                          CROSS-APPELLANTS


CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE A. C. MCKAY CHAUVIN, JUDGE
ACTION NO. 18-CI-000018 & 19-CI-003742


OLD REPUBLIC AEROSPACE
INSURANCE COMPANY                                       CROSS-APPELLEE

OPINION
AFFIRMING IN PART AND
REVERSING AND REMANDING IN PART
IN BOTH APPEALS

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; A. JONES AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Old Republic Aerospace, Inc. (hereinafter "Old Republic") appeals from orders of the Jefferson Circuit Court granting judgment in its breach of contract action in favor of Louisville Aviation, LLC and summarily dismissing its claims for fraud/misrepresentation and punitive damages against the LLC as well as all claims against Michael Pratt, its sole member, individually. Louisville Aviation and Pratt cross-appeal from orders summarily dismissing their counterclaims for wrongful use of civil proceedings, breach of contract, and bad faith. After careful review of the record, briefs, and law, we affirm in part, and reverse in part and remand in both appeals.

## BACKGROUND FACTS

These appeals stem from a dispute regarding insurance benefits paid after an aircraft leased by Louisville Aviation and insured by Old Republic was damaged. The underlying facts are largely undisputed.

Louisville Aviation is a limited liability company that rents aircrafts to the public, and Michael Pratt is the sole member of the company. Old Republic

insured Louisville Aviation's fleet. The insurance policy included the right of subrogation[1] as a condition of coverage:

> **16. SUBROGATION**. [I]n the event of any payment under this policy, [Old Republic] shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. **The Insured shall do nothing after the loss to prejudice such rights**.

(Second emphasis added.)

On November 4, 2016, Phillip Heiskell (the pilot) rented a plane from Louisville Aviation, and the aircraft was damaged during a hard landing. Heiskell was covered under a liability insurance policy issued by AIG Aerospace Insurance Services (hereinafter "AIG"). Within a week of the incident, the representatives from both insurance companies and Pratt had communicated about repairs.

On November 14, 2016, Pratt submitted to Kaleb Gilmore, a claims adjuster for AIG, an invoice for $13,505.50 per month for Louisville Aviation's lost revenue pursuant to a clause in the rental agreement signed by the pilot.

---

[1] Subrogation, also known as the rule of substitution, "is the rule of law which allows a party under a legal obligation to satisfy the debt of another and acquire the rights of the creditor against the debtor." *Wine v. Globe American Cas. Co.*, 917 S.W.2d 558, 561 (Ky. 1996) (citing *Nat'l Surety Corp. v. First Nat'l Bank*, 278 Ky. 273, 128 S.W.2d 766 (1939)). "All subrogation rights are derivative and the insurer only acquires the rights of its insured." *Id.* (citing *Fireman's Fund Ins. v. Gov't Employees Ins.*, 635 S.W.2d 475 (Ky. 1982)).

Gilmore counteroffered $10,055.80 per month for his loss of use,[2] and Pratt accepted. In a separate email, Gilmore told Pratt that Old Republic would "handle the hull [damage claim] and subrogate against [the AIG] policy once everything [wa]s sorted[,]" and AIG would pay up to the limit, and if that was not sufficient to pay the entire demand, "the balance w[ould] be shown on [Pratt's] loss run."

Meanwhile, at the end of November, Old Republic reminded Pratt that any benefits paid out "would be included in any future subrogation claim made . . . against [the pilot] and or [the pilot's] insurance company[,]" and it asked that he "not take any action or sign any release document provided by [the pilot] or his insurance company that would prevent Old Republic's potential subrogation claim." Pratt responded that, "[w]hile [he] would never sign anything with AIG releasing them from a claim or prohibiting [Old Republic] from going after them or [the pilot]," he believed the rental agreement entitled Louisville Aviation to recoup its lost revenue from the pilot or AIG. Pratt disclosed that he had already sent an invoice to the pilot, and he asserted that whether the pilot or AIG paid was between them and himself.

---

[2] Although Pratt sought lost revenue, AIG actually compensated him for the loss of use of the plane, the difference being that lost revenue does not account for expenses that are not incurred. For this reason, and the fact it conforms to the parties' brief, we refer to the sums AIG paid as loss of use damages, and we only use the term lost revenue when referencing Pratt's statements.

In January 2017, consistent with Pratt's Sworn Statement in Proof of Loss, Old Republic advanced $25,150.40 for the plane's repairs. The proof of loss contains a subrogation clause that reads:

> To the extent of the amount paid under the Policy, the undersigned hereby assigns to [Old Republic] any and all claims and causes of action the undersigned may have against any third party arising out of the loss for which this Proof of Loss is submitted. [Old Republic] is hereby subrogated to such claims and causes of action and is empowered to sue, compromise or settle in the name of the undersigned, and the undersigned hereby pledges cooperation in any such action.

The plane was still being repaired in February 2017. At that time, Aaron Hatch, who had taken over from Gilmore as the claims adjuster for AIG, informed Pratt that AIG would no longer make the "good faith" monthly payments for his loss of use damages. Instead, Hatch offered Pratt the remaining balance of the policy limit if he signed a "full and final release" for the pilot.

On March 7, 2017, Pratt signed the following document:

PROPERTY DAMAGE RELEASE

> **Louisville Aviation and [the plane's owner]** for and in consideration of the sum total of $80,000 of which $40,223.20 has already been paid, leaving $39,776.80 to be further paid by [**the pilot and AIG**], the receipt of which is hereby acknowledged; do hereby fully and forever release, acquit and discharge [**the pilot and AIG**] and their heirs, administrators, executors and assigns from any and all actions and causes of action, **for damage to [the plane]** incurred on or about the 4th day of November 2016 . . . for which damages the said are

claimed to be legally liable, and which liability is expressly denied; it being further understood and agreed that the acceptance of said sum is in full accord and satisfaction of a disputed claim and that the payment of said sum is not an admission of liability.

The undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full, complete and final compromise settlement of any and all claims, disputed or otherwise, liquidated or unliquidated, on account of the damages mentioned above, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

Thereafter, in April and May 2017, Pratt signed two more sworn statements in proof of loss, which each contained identical subrogation clauses as the earlier document. Based on these, Old Republic paid out an additional $28,638.96 for repairs (resulting in a total of $53,789.36) and $13,836.54 for the plane's owner's fixed costs. The plane returned to Louisville Aviation's fleet in May 2017.[3]

On May 25, 2017, Old Republic sent a letter to the pilot advising him of its subrogated interest and the $67,625.90 in benefits it had paid out as a result of his hard landing. Old Republic asserted that it was only after this that it learned

---

[3] Old Republic's brief claims that the plane returned to service on April 17, 2017, but this is refuted by its subrogation demand letter and emails entered into evidence.

of Pratt's self-directed claim against the AIG policy, the depletion of that policy, and Pratt's execution of the release against the pilot and AIG.

On January 2, 2018, Old Republic filed the underlying complaint raising claims of breach of contract, misrepresentation, and a fraudulent insurance act pursuant to Kentucky Revised Statutes (KRS) 304.47-020 against both Louisville Aviation and Pratt individually and seeking compensatory and punitive damages. Louisville Aviation and Pratt answered denying wrongdoing and countersued Old Republic, alleging that its action to recover properly paid insurance proceeds constituted a breach of contract, and asserting claims of common law bad faith, violations of Kentucky's Unfair Claims Settlement Practices Act (UCSPA), KRS 304.12-230, and the wrongful use of civil proceedings.[4]

By a September 4, 2018, order, the court granted a motion for partial judgment on the pleadings. It dismissed all claims against Pratt in his individual capacity, Old Republic's claims for punitive damages and insurance fraud, and Louisville Aviation's counterclaim for wrongful use of civil proceedings. Louisville Aviation's remaining counterclaims for breach of contract and bad faith were subsequently dismissed on January 6, 2020.

---

[4] The appellees also asserted that Old Republic violated the Kentucky Consumer Protection Act (KRS 367.170 and KRS 367.220), but they did not appeal the court's September 4, 2018, dismissal of this claim.

Thereafter, the sole remaining issue, whether Louisville Aviation had breached the insurance contract by prejudicing Old Republic's right of subrogation, came before the court for a three-day bench trial, and the parties introduced testimony from a supervising claims adjuster for Old Republic, an expert with decades of experience in aviation insurance, and Pratt.

A recounting of the specific testimony is not necessary. Old Republic took the position that Pratt had breached the subrogation condition of the policy by negotiating his loss of use claim directly with AIG, signing the release, exaggerating his loss of use damages, and erroneously depleting the AIG policy limits. The insurance expert testified that subrogation clauses are standard in the industry and that the term "prejudice" is afforded its common, ordinary meaning. Accordingly, he asserted that an insured need not extinguish the subrogation right to breach the condition, but rather the insured only needed to increase the difficulty or time necessary to exercise the right or strip the right of its value.

In its January 4, 2023, judgment in favor of the appellees, the court concluded that, "while Louisville Aviation's actions definitely adversely impacted [Old Republic's] ability to *collect or recoup* money from AIG and at least arguably from [the pilot], it did *not* destroy its *right* to pursue the collection of the funds from either source[,]" and thus, as a matter of law, Louisville Aviation was not in breach. Old Republic and the appellees now appeal.

**ANALYSIS**

**No. 2023-CA-0111-MR**

In its direct appeal, Old Republic seeks review of the circuit court's determination that the appellees did not breach the insurance contract. To recover for a breach of contract a plaintiff must prove the existence of a contract, a breach of that contract, and that the breach caused damages. *EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275, 293 (Ky. App. 2019). Only the latter two elements are disputed in these appeals. Central to whether a breach occurred is the meaning of "prejudice" in the subrogation clause of the contract, which, as stated hereinabove, provides "[t]he Insured shall do nothing after the loss to prejudice such rights."

"The interpretation of a contract, including determining whether a contract is ambiguous, is a question of law to be determined de novo on appellate review." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016) (citing *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006)). An unambiguous contract "will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence. A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Id.* at 694-95 (internal quotation marks and citations omitted).

Without explicitly finding that the contract was ambiguous, the court nevertheless concluded that the "term [prejudice] must be interpreted more narrowly [than its common meaning of 'to interfere with or to adversely impact'] to mean *actual prejudice*. In this context . . . 'prejudice' is the functional equivalent of 'destroyed.'" Accordingly, the court reasoned that while Louisville Aviation's actions adversely impacted Old Republic's ability to collect or recoup money from AIG and, arguably, from the pilot, its right to pursue collection of funds from either source was not destroyed.

Old Republic argues that the policy was clear on its face and that the court erred by not utilizing the plain meaning of the term "prejudice," which Merriam Webster Dictionary defines as "injury or damage resulting from some judgment or action of another in disregard of one's rights."[5] Without directly addressing this argument, Louisville Aviation acknowledges that the policy only required that the "right" of subrogation not be "prejudiced," and that prejudice is simply defined as "injury or harm." Having reviewed the language of the clause, as quoted above, we cannot say that it gives rise to more than one reasonable interpretation, thus, we agree that the court should have used the common meaning of its terms. Therefore, the judgment must be reversed and remanded.

---

[5] *Prejudice*, MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/prejudice (last visited Nov. 25, 2024).

In making this determination we recognize that both parties have cited cases[6] from other jurisdictions that discuss the role of prejudice in similar breach of subrogation clause actions. However, a review of those cases reveals that they do not involve the interpretation of the contract language. Rather, the cases address the proof requirements for such actions and hold that **if, any only if**, a breach is established, resulting prejudice, unrelated to the contract language, is an additional element necessary for an insurer to prevail and either avoid liability or recoup benefits previously paid. The cited authority is divided on who bears the burden of proof, with some courts taking the position that prejudice is presumed and the burden is on the insured to show otherwise, and what constitutes prejudice, destruction of the right alone or that recovery was not possible regardless of the insured's actions.[7] These cases simply have no bearing on determining whether the condition at issue herein was breached.

---

[6] *Allied Mu. Ins. Co. v. Heiken*, 675 N.W.2d 820 (Iowa 2004); *State Farm Mut. Auto. Ins. Co. v. Green*, 89 P.3d 97 (Utah 2003); and *Clark v. Chubb Group of Ins. Cos.*, 337 F.3d 687 (6th Cir. 2003).

[7] Although Kentucky has not directly addressed this issue, in *Jones v. Bituminous Casualty Co.*, 821 S.W.2d 798 (Ky. 1991), the Supreme Court addressed a breach of contract on the insured's alleged violation of a condition of the policy to provide prompt notice of an occurrence. Therein, the Court held that the insurer was required to prove probable prejudice resulted from the delay. *Id.* at 803.

Although we have determined that a reversible error occurred, our review continues because questions as to the effect of the release and proof of loss statements will arise again on remand.

Regarding the former, the court's conclusion that, as a matter of law, Old Republic was not precluded from pursuing compensation from either AIG or the pilot would require that the release Louisville Aviation executed was ineffective, although this was not discussed specifically by the court. On this point, Old Republic cites the all-encompassing language of the release and asserts, inconsistently, that it was either certainly or arguably prevented from recovery from both AIG and the pilot.[8]

Although the broad language of the release appears to be conclusive on Old Republic's inability to seek recovery, case law has recognized that, under certain conditions, a release is ineffective. In *Sharp v. Bannon*, 258 S.W.2d 713, 714 (Ky. 1953), the Court stated that:

> Where the wrongdoer chargeable with notice of insurer's rights as subrogee of insured makes a settlement with insured to which insurer is not a party, the settlement will be regarded as having been made subject to the rights of insurer, and without destruction thereof; but a general release by insured to a third person responsible for the loss and *without notice* or knowledge of the insurance

---

[8] Old Republic also repeatedly asserts that Louisville Aviation signed the release on the insurer's behalf without its permission or authority. However, because this claim is refuted by the plain language of the release, which makes no reference or allusion to Old Republic, we will not address it further.

company's rights is a bar to the company's claim to **subrogation**.

Here, emails sent months before the release was tendered or signed establish that AIG anticipated that Old Republic would handle the repair costs and then subrogate against the pilot's policy. Old Republic acknowledges the holding in *Bannon* and does not dispute the existence of the email. Given AIG's notice of Old Republic's subrogation rights, applying *Bannon*, the release was made subject to those rights.

To the extent Old Republic argues the release is valid regarding the pilot, Louisville Aviation asserts that AIG's notice of its subrogation rights should be imputed to the pilot and cites two cases holding that an employee's knowledge is imputed to the employer, *Bowlin Group, LLC v. Secretary of Labor*, 437 S.W.3d 738, 746 (Ky. App. 2014), and *Martin v. Provident Life & Accident. Insurance Co.*, 47 S.W.2d 524 (Ky. 1932), in support. Because we cannot discern if this issue was addressed by the court, we remand it for further consideration.

As for the proof of loss statements, frankly the Court fails to grasp the significance of these documents on the issues at hand or why Old Republic makes repeated reference thereto. We agree with the circuit court that, as a matter of law and despite the references therein to an assignment of rights, the proof of loss statements "had no impact" on Old Republic's subrogation rights and "did not subordinate Louisville Aviation's inherent right to pursue a full recovery for its

-13-

losses to those rights." In *Wine*, the Court noted that "[a]lthough in abstract terms an assignment differs from subrogation, in the field of insurance subrogation the distinction is academic and not a substantive matter." 917 S.W.2d at 564. The *Wine* Court did hold that "subrogation rights[, such as who has the superior right to compensation,] may be modified by contract, provided violence is not done to established equitable principles" upon clear and explicit contractual language, but Old Republic has made no such claim. *Id*. at 565. To the extent Old Republic relies on Louisville Aviation's signing of the proof of loss statements as evidence that the policy was breached, we leave that matter to the circuit court.

Next we turn to Old Republic's arguments that the circuit court erred in summarily dismissing its claim of fraudulent misrepresentation, its claim for punitive damages, and all claims against Pratt individually.

Summary judgment should be cautiously applied and not used as a substitute for trial. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991). Only when "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" should summary judgment be granted. Kentucky Rule of Civil Procedure (CR) 56.03. In considering a motion for summary judgment, a court is required to construe the record "in a light most

favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Steelvest*, 807 S.W.2d at 480. Because summary judgment involves only questions of law, we give no deference to the circuit court's assessment of the record its legal conclusions. *Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021).

Regarding its fraud and misrepresentation claim, Old Republic asserts in its briefs that it was induced to make payments not warranted under the policy by Pratt's false or reckless statements that Louisville Aviation would not prejudice its subrogation rights and that these actions satisfy the criteria for a claim of common law fraudulent misrepresentation.[9] As Louisville Aviation notes, this argument differs significantly from the claim of negligence per se for committing a

---

[9] [A] claim of *fraudulent* misrepresentation must satisfy six elements:

(1) that the declarant made a material representation to the plaintiff; (2) that this representation was false; (3) that the declarant knew the representation was false or made it recklessly; (4) that the declarant induced the plaintiff to act upon the misrepresentation; (5) that the plaintiff relied upon the misrepresentation; and (6) that the misrepresentation caused injury to the plaintiff.

A claim of *negligent* misrepresentation requires proof by clear and convincing evidence of a material representation that a defendant knew, or should have known, to be false.

*Collins v. Kentucky Lottery Corp.*, 399 S.W.3d 449, 453-54 (Ky. App. 2012) (internal quotation marks and citations omitted).

fraudulent insurance act in violation of KRS 304.47-020 that Old Republic raised in the circuit court and was summarily dismissed by the court's September 4, 2018, order.[10] Only issues properly brought to the attention of the circuit court are adequately preserved for appellate review. *Elery v. Commonwealth*, 368 S.W.3d 78, 97 (Ky. 2012) (citing *Richardson v. Commonwealth*, 483 S.W.2d 105, 106 (Ky. 1972)). Because Old Republic failed to bring its current legal argument to the circuit court's attention, we are not permitted to review it for the first time on appeal, and thus the court's dismissal stands.

In consequence, Old Republic's related challenge to the court's dismissal of its claim for punitive damages, which would only be available if it prevailed on the issue of fraudulent misrepresentation, is moot.[11]

Finally, Old Republic asserts that the court erred in dismissing its claim against Pratt individually for breaching the subrogation conditions contained in the policy as well as in three separate proof of loss statements that he signed. Citing KRS 275.150 and *Pannell v. Shannon*, 425 S.W.3d 58 (Ky. 2014), the court held that Pratt's actions were by law the acts of Louisville Aviation and that Pratt

---

[10] Old Republic also claimed preservation by its CR 60.02 motion to vacate the order dismissing its claims against Pratt or alternatively to amend the complaint, which was filed four years after the judgment at issue was entered. Although the motion did raise Old Republic's present legal theory, the court concluded that the requested relief was not warranted and never reached the merits of claim, and so it is not preserved.

[11] KRS 411.184(4) provides that "[i]n no case shall punitive damages be awarded for breach of contract."

could not be held personally liable. In its briefs, Old Republic refers this Court to various cases reiterating that the statutory immunity granted to LLCs does not shield its members from personal liability for their own fraudulent and tortious conduct, and it asserts that Pratt's conduct qualifies as such. Indeed, KRS 275.150(3) expressly provides that the immunity that shields members of an LLC from being held personally responsible for the debts, obligations, or liabilities of the entity does not extend to protect those members from liability for their own personal "negligence, wrongful acts, or misconduct." However, because the only remaining viable claim is for breach of contract, and there is no dispute that the policy and the proof of losses were signed by Pratt in his representative capacity, the court did not err in concluding that Pratt could not be personally liable. *See Young v. Vista Homes, Inc.*, 243 S.W.3d 352, 363-64 (Ky. App. 2007).

In summary, the January 4, 2023, judgment in favor of Louisville Aviation on Old Republic's breach of contract claim is reversed and remanded for proceedings consistent with this Opinion, and the portions of the September 4, 2018, judgment dismissing Old Republic's claims against Pratt individually, its claim of fraud, and claim for punitive damages are affirmed.

In its cross-appeal, Louisville Aviation asserts that the court wrongfully granted summary judgment and improperly dismissed its claims of wrongful use of civil proceedings and bad faith.

On the former, Louisville Aviation asserts its wrongful use of civil proceeding claim was erroneously dismissed on procedural grounds just because, at that point, there had not yet been a final adjudication of Old Republic's breach of contract suit. Louisville Aviation argues that the court should have bifurcated the claim and held it in abeyance instead as, it asserts, is the custom in Kentucky courts and as was requested in its response to Old Republic's motion to dismiss.

The order on appeal states as follows:

> To prevail on a claim for wrongful use of civil proceedings in Kentucky, the Defendants must prove the following elements: **(1)** [Old Republic] initiated, continued, or procured a criminal or civil judicial proceeding, **(2)** [Old Republic] acted without probable cause, **(3)** [Old Republic] acted with malice, which, in the civil context, means seeking to achieve a purpose other than proper adjudication of the claim, **(4)** the proceeding terminated in favor of the Defendants, **(5)** the Defendants suffered damages as a result of the proceeding. *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981) [*abrogated by Martin v. O'Daniel*, 507 S.W.3d 1 (Ky. 2016)]. Even when viewing the evidence of record in the light most favorable to Defendants there is insufficient evidence of record which would make it possible as a practical matter for the Defendants to prevail at trial.

Although the record up to that point unquestionably could not support a finding that Old Republic's breach of contract action terminated in Louisville Aviation's favor, we cannot agree that the court plainly dismissed the claim on this basis alone. Regardless, because we conclude dismissal on this ground was proper, we affirm.

While Louisville Aviation argues that it is standard practice for courts of the Commonwealth to bifurcate and abate, the authorities cited in support are either irrelevant[12] or distinguishable. In *Wittmer v. Jones*, the Supreme Court of Kentucky did hold that the trial court erred in denying the insurer's motion to bifurcate the issue of bad faith from the insured's negligence action against an alleged tortfeasor. 864 S.W.2d 885, 891 (Ky. 1993). However, as the Court explained, bifurcation in that case was to prevent unnecessary and possibly prejudicial evidence regarding liability insurance from being interjected into the trial of a negligence case. *Id*. Here, the concern is not prejudice but rather more fundamentally that the cause of action has not accrued. *Central Acceptance Corp. v. Rachal*, 95 S.W.2d 777 (Ky. 1936). Because Louisville Aviation could not

---

[12] Louisville Aviation cites to *Nationwide Mutual Insurance Co. v. State Farm Automobile Insurance Co.*, 973 S.W.2d 56, 58 (Ky. 1998), and *Mattingly v. Stinson*, 281 S.W.3d 796 (Ky. 2009), but we fail to see their relevance since the issue of bifurcation was not addressed in either case. Similarly, in *Farmland Mutual Insurance Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2000), the Court does not address bifurcation beyond noting that the trial court severed the insured's bad faith claim from their breach of contract claim and tried the latter first without any analysis of whether this was necessary or proper.

plead an essential element (that Old Republic's civil proceedings against it have

been favorably resolved) the court properly dismissed the claim.

Finally, Louisville Aviation argues that the court erred when it

dismissed its claims that Old Republic had acted in bad faith by:

> allegedly conspir[ing] with another insurance company
> against the interests of its own insured, pursu[ing] its
> insured through lengthy interrogation sessions that
> exceed reasonable justification, fail[ing] to assert its
> claims against the actual tortfeasor while pursuing its
> own insured out of personal animus, assert[ing] its right
> to all insurance proceeds over any recovery of its insured
> (albeit after paying the claim), and attempt[ing] to attain
> personal retribution against its insured through the filing
> of a suit that it knew or should have known to be legally
> baseless.

We agree.

Louisville Aviation has asserted bad faith claims under both the

common law, flowing from Old Republic's alleged breach of the covenant of good

faith and fair dealing inherent in an insurance contract, and based on Kentucky's

UCSPA, KRS 304.12-230.  *See Ind. Ins. Co. v. Demetre*, 527 S.W.3d 12, 26 (Ky.

2017).  The test applicable to all bad faith actions is:

> (1) the insurer must be obligated to pay the claim under
> the terms of the policy; (2) the insurer must lack a
> reasonable basis in law or fact for denying the claim; and
> (3) it must be shown that the insurer either knew there
> was no reasonable basis for denying the claim or acted
> with reckless disregard for whether such a basis existed.

*Wittmer*, 864 S.W.2d at 890.

-20-

In granting summary dismissal, the court accepted the argument that the claims failed as a matter of law because Old Republic timely paid for the plane's repair and the requested fixed costs in full. The court noted that bad faith actions generally involve an outright denial or the unreasonable delay in the payment of a claim. The court asserted that "[t]here is no precedent for holding an insurance agency liable under the UCSPA for a paying a claim to its insured, and subsequently bringing a breach of contract claim against its insured for allegedly prejudicing its subrogation rights." The court reasoned that "to the extent that the claims raised concern[s about] conduct subsequent to and outside of the claims settlement process, those claims are not redressable under the UCSPA[,]" pursuant to *Knotts v. Zurich Insurance Co.*, 197 S.W.3d 512 (Ky. 2006).

On cross-appeal, Louisville Aviation renews its argument that Old Republic's litigation to void coverage and recover paid damages is, in essence, an aggressive claim denial after the fact and that Kentucky's bad faith law is broad enough to encompass this conduct. In support, Louisville Aviation cites primarily to *Guaranty National Insurance Co. v. George*, 953 S.W.2d 946 (Ky. 1997), arguing that the Court's review on the merits despite noting the insured paid demonstrates the validity of its claim.

In *George*, the insured contracted for commercial insurance coverage on a mail truck; however, through some mistake, the policy listed a vehicle

-21-

identification number for a different truck owned by the insured's family. *Id.* at 947. The mail truck was then involved in a fatal accident, and the insured was sued for wrongful death. *Id.* The insurer defended the action but reserved the right to deny coverage if the facts indicated the mail truck was not covered by the policy. *Id.* The insured, in response, filed a bad faith action and simultaneously sought a declaration of rights to resolve whether coverage existed. *Id.* Ultimately, the circuit court determined that the policy should be reformed due to the parties' mutual mistake and that coverage existed. *Id.* Thereafter, the insurer promptly settled the wrongful death action within its policy limits. *Id.* at 948. The circuit court then summarily dismissed the insured's bad faith action concluding that the issue of coverage had been fairly debatable. *Id.*

The insured appealed, arguing that the insurer's "decision to defend under a reservation of rights amounted to outrageous conduct in that the undisputed facts indicated a mere clerical error on the face of the policy." *Id.* at 948. On discretionary review, the Supreme Court stated that, though in retrospect the issue of coverage may appear clear, it was not bad faith for a party to seek a declaration of rights when an ambiguity or a suspected material error on the fact of the policy would exclude coverage. *Id.* at 949. While the Court concluded the insurer's conduct did not satisfy the threshold for bad faith, citing the fact the insurer provided a defense and promptly settled once the issue of coverage was

resolved, it expressly rejected that defending under a reservation of rights and seeking declaratory judgment would automatically absolve an insurer of bad faith. *Id*. "Clearly, one can envision . . . situations where an insurer could abuse its legal prerogative in requesting a court to determine coverage issues. Those may well be addressed through a motion under Civil Rule 11 or, in certain circumstances, an action for bad faith." *Id*.

We conclude that Louisville Aviation's bad faith claims do not fail as a matter of law. Although not directly on point, *George* and its progeny, *Demetre*, 527 S.W.3d 12, demonstrate that the insurer's fulfillment of its contractual obligations, in those cases to defend their insured and settle tort actions filed against them, is only a factor to be considered in determining overall whether the insurer has breached the covenant of good faith and fair dealing inherent in any insurance contract or in violation of the UCSPA.

Additionally, we conclude that the court's reliance on *Knotts* is misplaced. In *Knotts*, an injured employee initiated a claim with his employer's insurer and later filed a personal injury suit against the employer. 197 S.W.3d at 513-14. Subsequently, the employee filed a bad faith suit against the insurer alleging violations of the UCSPA that occurred after the personal injury action was filed. *Id.* at 514. On discretionary review, the Supreme Court of Kentucky reversed the lower courts' determination that such conduct was not covered by the

UCSPA and held that the statute continues to apply during litigation. *Id.* The

Court explained that:

> The commencement of litigation by the filing of a
> complaint, even when the claim adjustment process is
> underway, however, does not change the fundamental
> nature of what the claimant seeks. The "claim" – for
> compensatory payment under the insurance policy – is
> the same as before the litigation began. The claimant has
> simply opted to seek satisfaction of the claim through a
> different procedure. Nothing in [the UCSPA] limits its
> applicability to pre-litigation conduct, and since the
> statute applies to "claims," it continues to apply to an
> insurer so long as a claim is in play. As such, we hold
> that [the UCSPA] applies both before and during
> litigation.

*Id.* at 517.

Here, Louisville Aviation's bad faith claims were brought pursuant to

the common law in addition to the UCSPA. Regardless, we do not read *Knotts* to

require dismissal in this matter, and we agree with Louisville Aviation that its

claim is still "in play" where, despite initially receiving its contracted for

compensatory benefits, it has been forced to defend this entitlement since Old

Republic commenced the underlying action in 2018.

Finally, we reject as specious Old Republic's related argument that

Louisville Aviation cannot satisfy the *Wittmer* standard because its claim was not

denied and was instead paid in full. As the *Knotts* Court has explained, the word

"claim" has multiple definitions, "[b]ut at its most basic, the word means an

-24-

assertion of a right, with the contours and specific nature of the right depending on context[,]" and in the context of insurance, this means an assertion of a right to compensatory payment under the policy.[13] *Id.* at 516. We believe that Old Republic's litigation challenging Louisville Aviation's rights to proceeds under the policy, regardless of the fact that the proceeds were initially paid out, could satisfy the *Wittmer* test if all other elements were shown.

Accordingly, the court erred in concluding that Old Republic's prompt and full payment for repairs and fixed costs precluded as a matter of law Louisville Aviation's bad faith claims.

In summation of the cross-appeal, the court's January 6, 2020, judgment dismissing Louisville Aviation's bad faith and breach of contract counterclaims is reversed and remanded for further proceedings, and the portion of the September 4, 2018, judgment dismissing the wrongful use of civil proceedings claim is affirmed.

## CONCLUSION

For the foregoing reasons, the court's January 4, 2023, and January 6, 2020, judgments are reversed and remanded for proceedings consistent with this Opinion, and the court's September 4, 2018, judgment is affirmed.

---

[13] Although the Court was discussing the meaning of the term as used in the UCSPA, we find this reasoning to be equally applicable to analyzing the test for bad faith.

ALL CONCUR.

| | |
|---|---|
| BRIEFS FOR APPELLANT/ CROSS-APPELLEE: | BRIEFS FOR APPELLEES/ CROSS-APPELLANTS: |
| Brandon C. R. Sword Alexandra C. Whittington Louisville, Kentucky | Brian D. Stempien Louisville, Kentucky |